## In re PENNSYLVANIA CENTRAL BREWING CO.
### No. 8927.

District Court, M. D. Pennsylvania.
Jan. 22, 1940.

R. Lawrence Coughlin, of Wilkes-Barre, Pa., for Luzerne County, Luzerne County Institution District, and Central Poor District of Luzerne County.

Edwin B. Morgan, of Wilkes-Barre, Pa., for City of Wilkes-Barre.

John H. Bigelow, of Hazelton, Pa., and Jerome P. Casey, of Scranton, Pa., for trustees.

J. Donald Reifsnyder and J. Julius Levy, both of Scranton, Pa., for wage claimants.

ALBERT W. JOHNSON, District Judge.

This proceeding was begun on December 18, 1934, when the debtor filed a petition for reorganization under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, as then existing. Subsequently it became apparent that no plan of reorganization could receive the requisite approvals, and the special master to whom the case had been referred, was ordered to proceed

with liquidation of the debtor's assets. The process of liquidation has been long and complicated, with much litigation, but on October 31, 1939, the trustees were able at last to file their report and account. With due notice and hearing, the special master made audit and report thereon, with recommendations to the court to order distribution (1) for administration expenses, $24,621.56, and (2) to wage claimants entitled to priority under section 64, sub. a(2), 11 U.S.C.A. § 104, sub. a(2), $23,559.79, thus consuming all funds in the hands of the trustees for distribution. Certain taxing authorities of the county of Luzerne and the City of Wilkes-Barre have filed exceptions to the report and recommendations of the special master, and these exceptions are now before the court for disposition.

The exceptants, Luzerne County, Luzerne County Institution District, Central Poor District of Luzerne County, and the City of Wilkes-Barre, allege the recommended distribution to be unlawful in giving priority to administration expenses and wage claims over tax liens held by the exceptants. It is asserted that their tax liens are prior in distribution to wage claims, trustees' fees, counsel fees, special master's fees, and other administrative expenses not directly applicable to the preservation of the property against which the aforesaid taxes have been liened.

█ It is not questioned that the provisions of the amendatory Chandler Act of 1938 should be applied in determining the issue before the court. Neither is it questioned that the alleged tax liens have been perfected according to the laws of Pennsylvania, so as to be valid statutory liens.

The relevant sections of the Chandler Act are 64 and 67, 11 U.S.C.A. §§ 104, 107, which are as follows:

"Sec. 64 [§ 104]. Debts which have priority

"a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) [administration expenses]; (2) wages, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding, due to workmen * * *; (3) [expenses to certain creditors, not applicable here]; (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof * * *; (5) debts owing to any person, including the United States, who by the laws of the United States is entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law * * *.

"b. * * *"

"sec. 67 [§ 107]. Liens and fraudulent transfers

"a. * * *

"b. The provisions of section 60 [96] of this Act [title] to the contrary notwithstanding, statutory liens in favor of employees, contractors, mechanics, landlords, or other classes of persons, and statutory liens for taxes and debts owing to the United States or any State or subdivision thereof, created or recognized by the laws of the United States or of any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition in bankruptcy or of the original petition under chapter X, XI, XII, or XIII [10, 11, 12, or 13] of this Act [title], by or against him. Where by such laws such liens are required to be perfected and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws, except that if such laws require the liens to be perfected by the seizure of property, they shall instead be perfected by filing notice thereof with the court.

"c. Where not enforced by sale before the filing of a petition in bankruptcy or of an original petition under chapter X, XI, XII, or XIII [10, 11, 12, or 13] of this Act [title], though valid under subdivision b of this section, statutory liens, including liens for taxes or debts owing to the United States or to any State or subdivision thereof, on personal property not accompanied by possession of such property, and liens whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 [104] of this Act [title], and, except as against other liens, such liens for wages or for rent shall be restricted in the amount of their payment to the same extent as provided for wages and rent respectively in subdivision a of section 64 [104] of this Act [title]."

Counsel for wage claimants contend that when section 64, sub. a, ranks "taxes" fourth in order of priority of payment, "taxes" includes tax claims and tax liens, and therefore, administration expenses and wage claims would properly come ahead of both tax claims and tax liens. Such a construction can not stand, in view of the language of section 67, sub. c, which in effect, for our purposes, says that statutory liens for taxes on personal property, unless certain conditions are met, shall be postponed in payment to administration expenses and wage claims given priority under 64, sub. a. If "taxes" as used in section 64, sub. a, included tax liens, this provision of section 67, sub. c, would be useless, for the liens therein postponed in time of payment would already have been postponed in payment by the terms of 64, sub. a. And it is not reasonable to argue that "taxes" as used in 64, sub. a, includes tax liens on real property and not tax liens on personal property, since the latter are covered by section 67, sub. c. Such a construction would, in certain situations, rank tax liens on personalty ahead of tax liens on realty. Congress surely meant no such situation to result.

■ Section 67, sub. c, does justify the conclusion that "taxes" as used in section 64, sub. a, was not meant to include tax liens. The result is, that under the present Bankruptcy Act, tax liens on real property, perfected as valid statutory liens in accordance with state law, are entitled to payment in full, ahead of the priorities set out in section 64, sub. a, out of the proceeds of sale of the property against which the taxes are liens, diminished only by the actual expenses of preserving the property on which the taxes are liens, and by the administrative expenses directly applicable to the sale of such real property.

■ Luzerne County, Luzerne County Institution District, and Central Poor District of Luzerne County assert tax liens of $6,141.27 against the property of the debtor in Luzerne County, and the City of Wilkes-Barre asserts tax liens against the property of the debtor in the City of Wilkes-Barre, in the sum of $8,808.23, or a portion thereof. They seek payment of these sums out of the proceeds of the sale of one property of the debtor, namely, the Reichard and Weaver plant located on Water Street in Wilkes-Barre, Luzerne County, Pennsylvania. Said real property was sold to Luzerne County for $16,000. The except-

ants want practically this whole fund devoted to payment of their liens. They are not entitled to this. The Pennsylvania acts under which they claim tax liens (Act of 1931, May 29, P.L. 280, sec. 4 as amended, 1933, May 22, P.L. 940, sec. 1, 1939, June 20, P.L. 498, sec. 2, 72 P.S. § 5971d; and Act of 1923, May 16, P.L. 207, sec. 2, 53 P.S. § 2022) specifically state the taxes therein concerned shall be first liens upon the property liable for the payment thereof. In other words, the above fund of $16,000 would be liable only for the taxes assessed against the Reichard and Weaver real estate on Water Street in Wilkes-Barre, Pennsylvania, and not for all the taxes assessed against the debtor generally in the city of Wilkes-Barre or in the county of Luzerne.

■ However, even this pro rata amount will not be paid to exceptants in the present proceeding. We have the uncontradicted statement of the special master that the tax assessments can not be broken down to determine what proportion of taxes are against which properties of the debtor, or what portions are assessed against the real estate, and what portions, if any, are assessed against the personal estate of the debtor. Therefore, the special master has treated them as taxes against the entire estate rather than against specific properties, and rightfully so. Where the Bankruptcy Act gives to state tax liens a priority in payment, the burden is on the taxing authorities to prove their liens as to amounts against specific properties, if, as here, they wish to assert their lien against the proceeds derived from sale of that property. If they are unable to prove in this manner, their liens are then properly paid as tax claims under section 64, sub. a, subsequent to payment of administration expenses and wage claims.

■ Furthermore, in the complicated administration of this estate, there has been such acquiescence by the taxing authorities in the procedure followed, that even if they could prove the amounts of their tax liens against specific properties, they could not object to first subjecting the proceeds of sale to all general administration expenses, whether or not those expenses related to the preservation of the particular property against which tax liens are claimed. For example, one sale consisted of the personal property in the Reichard and Weaver plant in Wilkes-Barre and the real and personal property in the

E. Robinson plant at Scranton, for a lump sum of $39,610. No exception was ever taken to the final order of confirmation of that sale. From such situation it is impossible to tell what proportion of administration expenses went to preserve any given portion of the debtor's estate. Ordinarily the acquiescence of a lienholder in the administration of the lien debtor's estate in bankruptcy will not injure or lessen the lienholder's rights, but, where the lienholder acquiesces in a course of administration which makes impossible the calculation of his rights as he asserts them, he will then be deemed to have waived such rights, and as here, general administration expenses will be deducted first from the proceeds of sale, ahead of payment to the lienholder.

For the above reasons, it is therefore ordered that the report and audit of the special master upon the report and account of the trustees in the above case be, and the same is hereby confirmed, and all exceptions to the report of the special master be, and the same are hereby dismissed.

It is further ordered that the trustees shall forthwith proceed with distribution of the funds in their hands, in accordance with the report of the special master.